UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Hamdi A. Mohamud, | Case No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Heather Weyker, in her individual capacity as a St. Paul Police Officer, | **JURY TRIAL DEMANDED UNDER FRCP 38(b)** |
| Defendant. | |

Plaintiff, Hamdi A. Mohamud, for her complaint against the above-named Defendant, states and alleges as follows:

1. Plaintiff brings this action seeking money damages for injuries caused by Defendant's violation of her well-settled rights under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

2. Before June 16, 2011, in the matter of *U.S. v. Adan*, M.D. Tenn., No. 3:10—00260, and related criminal cases (the "*Adan* cases"), Defendant Weyker, acting under color of state law, fabricated evidence to create false, federal, sex-trafficking, criminal cases and to secure federal indictments, for which there was no probable cause, against numerous innocent individuals.

3. Plaintiff had no involvement as a suspect, witness or person of interest, in the *Adan* cases. Nonetheless, as further detailed below, after concocting the *Adan* cases, Weyker, acting under color of state law, knowingly provided false information, fabricated evidence, and withheld exculpatory evidence, about Plaintiff; thus, causing her to be unlawfully seized, detained, arrested, and jailed for allegedly tampering with a witness and obstructing prosecution of the *Adan* cases.

4. Because Weyker furnished false information, fabricated evidence, and withheld exculpatory evidence, Plaintiff was seized and arrested by a Minneapolis police officer on June 16 2011. But for

Weyker's fabrication of evidence, furnishing of false information, and withholding of exculpatory evidence, no arguable probable cause existed to seize, apprehend, arrest, or detain Plaintiff for witness tampering or obstruction. All charges against Plaintiff were dismissed in July 2013. As a consequence of Weyker's violation of Plaintiff's well-settled federal civil rights, Plaintiff spent more than two years subject to extreme deprivations of her liberty. She spent the majority of this time wrongfully incarcerated in various jails far from her home in Minnesota.

5. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, to vindicate her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. For preservation purposes, she also pleads a claim, alleging violation of her Fourth and Fifth Amendment rights, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

6. Under the applicable common law and statutory and constitutional provisions, this Court has original jurisdiction over Plaintiff's claims.

7. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

8. Plaintiff is a 23-year-old Somali-American woman, a permanent legal resident of the United States, and a long-time resident of Minnesota.

9. At all times material hereto, Weyker was a U.S. Citizen, a resident of Minnesota, and a St. Paul police officer. She acted under color of state law and in her individual capacity to deprive Plaintiff of her well-settled federal civil rights.[1]

10. The City of St. Paul is a municipality duly incorporated under the laws of the State of Minnesota. At all times material, St. Paul employed Weyker as a police officer.

11. At all times material, Weyker failed to act in an objectively reasonable manner as further described below.

---

[1] Below, Plaintiff includes a *Bivens* claim. This claim is asserted to preserve the cause of action, in case it is determined through discovery that Weyker was acting under of color of federal law at any time material to Plaintiff's causes of action.

2

12. On June 16, 2011, Plaintiff and two of her friends were involved in an altercation with Muna Abdulkadir. The incident occurred at Abdulkadir's apartment building in Minneapolis, Minnesota. It began when Abdulkadir invited one of Plaintiff's friends, Hawo Ahmed, to fight as a way to settle their "beef." Plaintiff's friend accepted Abdulkadir's invitation to fight, and Abdulkadir suggested that she would go upstairs and change her clothes first. The four women then proceeded together into an elevator.

13. In the elevator, a physical scuffle briefly ensued. The events in the elevator were captured by a security camera. On the video it is clear that Plaintiff had no physical contact with Abdulkadir; it is clear that neither Plaintiff nor her two friends had a knife; it is clear that Abdulkadir was not struck by a knife; it is clear that Plaintiff never struck Abdulkadir; it is clear that Abdulkadir exited the elevator without injury; it is clear that Plaintiff never exited the elevator; and, it is clear that Plaintiff and her friends returned to the elevator rather than chasing Abdulkadir to her apartment.

14. After Abdulkadir exited the elevator, she safely made it to her apartment. Plaintiff and her friends did not follow her. At her apartment, Abdulkadir obtained a large knife. Then she headed back downstairs to confront Plaintiff and her friends with the knife.

15. When Abdulkadir came downstairs brandishing the knife, Plaintiff and her friends had not yet exited the building. At that point, rather than return to her apartment, Abdulkadir proceeded to Plaintiff's friend's vehicle and began to smash the windshield with the knife. Shortly thereafter, Plaintiff and her friends exited the building. Then Abdulkadir struck one of Plaintiff's friends with the knife. After being attacked by Abdulkadir, Plaintiff and her friends called 911 to report Abdulkadir for assault and damage to property.

16. Once Abdulkadir realized the police had been summoned, she ran back into her apartment building. She did not return to her apartment, nor did she call 911; instead, she phoned Weyker.

3

Upon information and belief, Abdulkadir told Weyker the following: that she had been in a fight; that she had attacked Plaintiff and her friends with a knife; that the police were on the way; that she was hiding in a neighbor's apartment; and, that she feared she was going to be arrested for attacking Plaintiff and her friends.

17. Minneapolis Police Officer, Anthijuan Beeks, responded to the 911 call initiated by Plaintiff and her friends. When he arrived on the scene, Officer Beeks correctly regarded Plaintiff and her friends as the victims of a local crime, a crime committed by Adbulkadir.

18. After he was on the scene in Minneapolis for about twenty minutes, Officer Beeks received a message that he should contact "Officer Heather Weyker out of St. Paul" before proceeding further with the investigation into Abdulkadir's assault of Plaintiff and her friends.

19. Officer Beeks responded to the message by phoning Weyker. She proceeded to knowingly tell Officer Beeks false information, information that she knew would lead to Plaintiff and her friends being unlawfully seized and detained—namely, she stated that Abdulkadir "is a federal witness in a prostitution investigation where 30 Somali males have been indicted," that Weyker had "information and documentation" that Plaintiff and her friends "had been actively seeking out Abdulkadir and attempting to intimidate [her] and cause bodily harm," and that one of Plaintiff's friends was currently dating a man who had been indicted in the *Adan* cases.

20. At the time she reported this information to Officer Beeks, Weyker knew it was untrue. In fact, she had no "information" or "documentation" that Plaintiff and her friends "had been actively seeking out Abdulkadir and attempting to intimidate [her] and cause bodily harm." Nor did she have any information that one of Plaintiff's friends was currently dating a man who had been indicted in the *Adan* cases.

21. After speaking with Weyker, Officer Beeks interviewed Abdulkadir about the altercation with Plaintiff and her friends. This interview produced no facts that would support probable cause

4

or arguable probable cause to seize or detain Plaintiff and her friends. Abdulkadir told Beeks that the altercation with Plaintiff and her friends started with a casual conversation; she said nothing to him about having any dispute with Plaintiff and her friends; she said nothing to him about Plaintiff or her friends making any threats; she mentioned nothing to him relating to the Tennessee prostitution investigation (the *Adan* cases) or her participation in it; she said nothing to him about Plaintiff or her friends having a knife; she said nothing to him about why she wanted to fight with Plaintiff's friend; she said nothing to him about being injured by a knife; and, she did not show Officer Beeks any injuries from a knife. Officer Beeks also determined that Abdulkadir had not attempted to call 911; instead of calling 911, she had grabbed a knife and proceeded downstairs to smash the windshield of Plaintiff's friend's car. Abdulkadir also admitted to Officer Beeks that she struck one of Plaintiff's friends with the knife.

22. Upon information and belief, subsequent to Abdulkadir's initial statement to Officer Beeks, wherein she made no statement that would support arguable probable cause to suspect, detain or arrest Plaintiff or her friends for tampering with a federal witness, Weyker coerced, cajoled, and manipulated Abdulkadir and her mother into making future fabricated statements about Abdulkadir's interaction with Plaintiff and her friends that they knew were false.

23. On the night of June 16, 2011, in addition to speaking with Officer Beeks, Weyker also contacted Minneapolis Police Sergeant Gary Manty. She proceeded to knowingly tell Sergeant Manty false information that she knew would lead to Plaintiff and her friends being unlawfully seized and detained—namely, that one of Plaintiff's friends had stated to Abdulkadir that she had gotten her "niggaz locked up" and that these incarcerated persons were "SOL" (Somali Outlaws); that one of Plaintiff's friends was acquainted with a man who had been indicted in the *Adan* cases; that Plaintiff and her friends were there (at the scene in Minneapolis) to intimidate Abdulkadir about being a federal witness against persons who had been arrested and charged in the *Adan* cases; and, that

5

Abdulkadir feared for her life and feared retaliation because of her involvement in the *Adan* cases. At the time Weyker reported all this false information to Sergeant Manty, she knew it was all untrue. Weyker furnished this false information with the intention of shielding Abdulkadir from arrest for assaulting Plaintiff and her friends, and with the intention of causing Plaintiff and her friends to be arrested under false pretenses without arguable probable cause.

24. The interaction between Plaintiff and Abdulkadir had nothing to do with the *Adan* cases. Yet, based solely on Weyker's intentional misrepresentations to the Minneapolis Police about Plaintiff and her friends, their actions, and their motives, Plaintiff and her friends were apprehended and transported to jail on suspicion of tampering with a federal witness. Had Weyker not used her position as a St. Paul Police Officer to inject herself into the Minneapolis Police Department's investigation of a purely local crime—the assault committed by Abdulkadir—by fabricating evidence, withholding exculpatory evidence, and knowingly relaying false information, no arguable probable cause existed to detain or seize Plaintiff and her friends, and the Minneapolis Police would not have detained, seized or arrested Plaintiff and her friends. Weyker's false statements were the only reason Officer Beeks and Sergeant Manty believed they had probable cause, or arguable probable cause, to arrest, seize, or detain Plaintiff and her friends.

25. One day after causing Plaintiff's unlawful seizure, Weyker swore out a federal criminal complaint and supporting affidavit against Plaintiff and her friends for tampering with a federal witness and obstructing the investigation of the *Adan* cases. In her complaint, Weyker fabricated facts, knowingly relayed false information, and withheld exculpatory facts, all with the intention that Plaintiff and her friends would continue being seized and detained for crimes which she knew there to be no actual probable cause or arguable probable cause.

    a. She relayed statements attributed to Abdulkadir regarding the altercation between Plaintiff and Abdulkadir that she knew were false, that she knew were inconsistent with

6

the facts as originally relayed to her by Abdulkadir, or that she knew were inconsistent with the facts revealed by the investigation into the altercation. For example:

   i. She stated that the altercation was related to the "case in Nashville," but she knew there were no facts to support the assertion.

   ii. She stated that one of Plaintiff's friends confronted Abdulkadir because she had "locked all my niggaz up," but she knew there was no factual basis to support this statement.

   iii. She relayed claims that Abdulkadir had been attacked with a knife and injured, but she knew there was no evidence of Plaintiff or her friends having a knife (let alone attacking Abdulkadir with a knife) nor any evidence of Abdulkadir suffering any injuries.

   iv. She stated that Plaintiff or her friends chased Abdulkadir outside with a knife, but she knew Plaintiff and her friends had no knife and gave no such chase.

   v. She stated that Plaintiff or her friends attacked Abdulkadir's mother, but she knew that no one had attacked her mother.

   vi. She relayed that Plaintiff and her friends had threatened Abdulkadir about putting people in jail; but she knew they had not made any such threats.

   vii. She relayed that Abdulkadir had attempted to call 911, but she knew that Abdulkadir had not attempted to call 911.

b. Weyker also failed to provide exculpatory evidence that she knew would not support probable cause or arguable probable against Plaintiff and her friends.

   i. She failed to state that Plaintiff and her friends had contacted 911 to report being assaulted by Abdulkadir.

    ii.    She failed to state that Abdulkadir contacted her while hiding from the Minneapolis Police because she was afraid of being arrested for assaulting Plaintiff and her friends.

    iii.    She failed to state that Abdulkadir had a history of lying to Weyker and other investigators and that Abdulkadir was known to Weyker to be an unreliable source of information.

    iv.    She failed to state that there was no prior history of Plaintiff and her friends being involved with persons who had been indicted in the *Adan* cases.

    v.    She failed to state that there was no prior history of Plaintiff and her friends communicating with Abdulkadir about the *Adan* cases.

    vi.    She failed to state that the on-scene investigator's interview with Abdulkadir: adduced no statement about Plaintiff or her friends threatening Abdulkadir; adduced no statement about Plaintiff or her friends attacking Abdulkadir with a knife; adduced no statement about Plaintiff or her friends mentioning Abdulkadir's activities as a witness; and, adduced no other facts that would support probable cause or arguable probable cause for the crime of witness tampering and/or obstruction.

26. On June 17, 2011, as a direct consequence of Weyker's false statements to the Minneapolis Police and her false affidavit in support of the federal criminal complaint, an arrest warrant was issued and Plaintiff and her friends were placed in federal custody for allegedly violating 18 U.S.C. § 1513(b)(1) and 1513(b)(2) (allegedly for retaliating against a federal witness through bodily injury, injury to property, or threats of such injury with the intent to retaliate against the witness).

27. Because of Weyker's unlawful and unconstitutional actions, Plaintiff and her friends were indicted for violating federal laws—18 U.S.C. § 1513(b)(1), 18 U.S.C. § 1513(b)(2), 18 U.S.C. §

8

1513(c), 18 U.S.C. § 1513(f), and 18 U.S.C. § 1591(d)—on June 29, 2011. But for Weyker injecting herself into a purely local police matter, and but for Weyker continuously making and repeating false statements to create probable cause where none existed, no probable cause or arguable probable existed to initially seize, and subsequently continue the seizure of, Plaintiff and her friends.

28. From June 17, 2011 until the complete dismissal of all charges against her on July 10, 2013, Plaintiff remained seized and in federal custody. For a small portion of this time, she was subject to supervised release. However, she spent the majority of this time incarcerated in various jails far from Minnesota. During her detention, Plaintiff was less than 18 years old, and she suffered severe emotional distress and mental anguish. This harm to Plaintiff was exacerbated by the fact that she was in jail with adults when she was still just a child.

29. Plaintiff would not have been unconstitutionally seized, detained, and arrested but for Weyker's illegal and unconstitutional fabrication of evidence, withholding of exculpatory evidence, and furnishing of false information, to support said unlawful seizure, detention, arrest, and ongoing seizure of Plaintiff.

### COUNT I
### 42 U.S.C. § 1983—Fourth and Fourteenth Amendment Violations
### (Weyker in her Individual Capacity)

30. Plaintiff re-alleges each of the preceding allegations as if fully set forth herein.

31. Defendant Weyker, while acting under color of state law as a St. Paul police officer, injected herself into a purely local police matter and supplied false information and fabricated evidence against Plaintiff and her friends to establish probable cause that did not otherwise exist or arguably exist, for the purpose of causing them to be seized, arrested, detained, charged and indicted, with willful malice or with deliberate indifference to their liberty interest and constitutional rights in a manner that shocks the conscience.

32. Weyker also intentionally or recklessly supplied false information as part of a continuing investigation into the false allegations against Plaintiff and her friends, whereby she ignored exculpatory evidence and targeted Plaintiff and her friends for seizure, arrest, detention, and indictment despite knowing there was insufficient legitimate evidence to independently establish the requisite suspicion or probable cause or arguable probable against Plaintiff and/or her friends.

33. Weyker's misconduct, including that described above, while acting under color of state law, directly and proximately caused violations of Plaintiff's clearly established, well-settled Fourth Amendment right to be free from unreasonable search and seizure, false arrest, and ongoing seizure while in pre-trial detention, which seizure continued without there being arguable probable cause from the moment of Plaintiff's initial detention until her release in July 2013.

34. Weyker's misconduct, including that described above, while acting under color of state law, directly and proximately caused violations of Plaintiff's clearly established, well-settled Fourteenth Amendment due process rights and infringed upon her liberty interest.

35. Weyker committed this misconduct maliciously or with reckless disregard for whether Plaintiff's rights would be violated and in a manner that shocks the conscience.

36. As a direct and proximate result of Weyker's acts and omissions, Plaintiff suffered a grievous loss of liberty, severe mental anguish, bodily harm, loss of enjoyment of life, pecuniary harm, and a fundamental constitutional injury. Plaintiff seeks compensatory damages in excess of $75,000.00.

37. Plaintiff claims punitive damages against Weyker in excess of $75,000.00. Said damages are available as a matter of right under *Smith v. Wade*, 461 U.S. 30 (1983), and they are not subject to the requirements of Minn. Stat. § 549.20.

38. Plaintiff is entitled to recover her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT II
### *Bivens* Claim—Fourth and Fifth Amendment Violations

39. Plaintiff re-alleges each of the preceding allegations as if fully set forth herein.

40. Although Weyker was a member of a state-federal task force related to the *Adan* cases, she was <u>not</u> acting under color of <u>federal law</u> when she caused Plaintiff and her friends to be unlawfully arrested, seized and detained. Nor was she acting under color of federal law when she swore out a false affidavit in support of federal criminal charges against Plaintiff and her friends. Upon information and belief, at some point subsequent to Plaintiff's initial seizure and the dismissal of all criminal charges against her, Weyker may have been acting under color of federal law. The precise extent to which Weyker may be deemed a federal actor after the initial seizure of Plaintiff and her friends is unknown without additional discovery into the details of Weyker being deputized as a member of a state-federal task force. To the extent she was deputized or deemed a federal actor and representing herself as acting under color of federal law at any time material to this lawsuit, Weyker is liable for violations of Plaintiff's Fifth Amendment Due Process rights and Fourth Amendment rights as described in Count I, said liability attaching under the legal doctrine established in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

41. Weyker committed this misconduct maliciously or with reckless disregard for whether Plaintiff's rights would be violated and in a manner that shocks the conscience.

42. As a direct and proximate result of Weyker's acts and omissions, Plaintiff suffered a grievous loss of liberty, severe mental anguish, bodily harm, loss of enjoyment of life, pecuniary harm, and a fundamental constitutional injury. Plaintiff seeks compensatory damages in excess of $75,000.00.

43. Plaintiff claims punitive damages against Weyker in excess of $75,000.00. Said damages are available to Plaintiff because Weyker's misconduct was motivated by evil intent or involved reckless indifference to Plaintiff's federally protected rights, and Weyker acted in the face of a perceived risk that her actions would violate federal law.

44.     Plaintiff is entitled to recover her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988, 28 U.S.C. § 2412, or other federal statute and common law.

## JURY TRIAL DEMAND

Pursuant to FRCP 38(b), Plaintiff hereby demands a trial by jury with respect to each issue which she is entitled to have a jury determine.

## PRAYER FOR RELIEF

Wherefore Plaintiff requests entry of judgment in her favor and against Defendants providing as follows:

Count I—entry of judgment against Weyker for compensatory damages in an amount exceeding $75,000.00, for punitive damages exceeding $75,000.00, and for Plaintiff's costs and attorneys' fees, along with prejudgment interest.

Count II—entry of judgment against Weyker for compensatory damages in an amount exceeding $75,000.00, for punitive damages exceeding $75,000.00, and for Plaintiff's costs and attorneys' fees, along with prejudgment interest.

**MULLER & MULLER, PLLC**

Date:  June 15, 2017

/s/ Andrew Phillips Muller
Andrew P. Muller (No. 32467X)
3109 West 50th Street, No. 362
Minneapolis, MN 55410-2102
(612) 604-5341
apmuller@themullerlawfirm.com

**JOHN A. KLASSEN, PA**
John A. Klassen (No. 24434X)
The Flour Exchange Bldg.
310 Fourth Avenue South, Suite 5010
Minneapolis, MN 55415
(612) 204-4533
john@jaklaw.com

**ATTORNEYS FOR PLAINTIFF**