# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Hamdi A. Mohamud,

      Plaintiff,

v.

Heather Weyker, in her individual capacity
as a St. Paul Police Officer,

      Defendant.

Case No. 17-cv-2069 (JNE/TNL)
ORDER

Hawo O. Ahmed,

      Plaintiff,

v.

Heather Weyker, in her individual capacity
as a St. Paul Police Officer,

      Defendant.

Case No. 17-cv-2070 (JNE/TNL)
ORDER

Asserting that they were seized in violation of the Fourth Amendment, Hamdi A. Mohamud and Hawo O. Ahmed brought actions against Heather Weyker under 42 U.S.C. § 1983 (2012) and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Mohamud and Ahmed alleged that Weyker, a St. Paul police officer, provided false information, fabricated evidence, and withheld exculpatory evidence about them. They were arrested and subsequently charged with witness tampering and obstructing sex trafficking enforcement. Ahmed was acquitted after a jury trial. The charges against Mohamud were dismissed.

Weyker moved to dismiss Mohamud's and Ahmed's actions, arguing that she is entitled to qualified immunity because Mohamud and Ahmed failed to plausibly allege Weyker violated any clearly established constitutional right. Weyker also asserted that no cause of action exists under either *Bivens* or § 1983 to sue her in her individual capacity. For the reasons set forth below, the Court denies Weyker's motions.

## I.  BACKGROUND

Mohamud's and Ahmed's amended complaints are essentially identical. The following summarizes them.

On June 16, 2011, Mohamud, Ahmed, and another individual were involved in an altercation with Muna Abdulkadir.[1] The incident took place at Abdulkadir's apartment building in Minneapolis, Minnesota. Ahmed and Abdulkadir agreed to fight to settle their "beef." After agreeing to fight, Abdulkadir indicated she wanted to go upstairs and change her clothes. The four entered an elevator, where a scuffle briefly took place. Abdulkadir exited the elevator, and the other three descended in the elevator.

Abdulkadir retrieved a knife from her apartment, proceeded downstairs, and exited the building. Abdulkadir approached Ahmed's vehicle and smashed its windshield with the knife. A short time later, Ahmed, Mohamud, and the other individual exited the

---

[1]  Ifrah Yassin is the third individual who was involved in the altercation with Abdulkadir. Yassin brought an action against Weyker and others that is similar to the actions brought by Mohamud and Ahmed. The Court granted in part and denied in part Weyker's motion to dismiss Yassin's claims. *Yassin v. Weyker*, Case No. 16-cv-2580 (JNE/TNL), 2017 WL 3425689 (D. Minn. Aug. 9, 2017), *appeal docketed*, No. 17-3208 (8th Cir. Oct. 13, 2017).

building.  Abdulkadir struck the other individual with the knife.   Ahmed, Mohamud, and

the other individual called 911 to report Abdulkadir for assault and property damage.

When Abdulkadir realized the police had been summoned, she returned to her

apartment building and called Weyker.  Abdulkadir told Weyker that she had been in a

fight; that she had attacked Mohamud, Ahmed, and the other individual with a knife; that

the police had been summoned; that she was hiding in a neighbor's apartment; and that

she feared she was going to be arrested.

A Minneapolis police officer, Anthijuan Beeks, responded to the 911 call made by

Ahmed, Mohamud, and the other individual.  When he arrived on the scene, Beeks

regarded them as victims of a crime committed by Abdulkadir.  He had no reason to

suspect that Ahmed, Mohamud, and the other individual had sought to harm, threaten, or

intimidate Abdulkadir because of her role as a witness in a federal prosecution.

Approximately 20 minutes after he arrived on the scene, Beeks received a message

that he should contact Weyker before he continued his investigation.  He called her, and

she told him that Abdulkadir is a federal witness in a prostitution investigation in which

30 people had been indicted; that Weyker had information and documentation that

Ahmed, Mohamud, and the other individual had been actively seeking out Abdulkadir

and attempting to intimidate and harm Abdulkadir; and that one of Ahmed's friends was

dating a man who had been indicted in the prostitution investigation.  Weyker knowingly

gave false information to Beeks.  She had no information or documentation that Ahmed,

Mohamud, and the other individual were actively looking for Abdulkadir and attempting

to intimidate or harm Abdulkadir.  Weyker had no information that one of Ahmed's friends was dating a man who had been indicted in the prostitution investigation.

After he spoke with Weyker, Beeks interviewed Abdulkadir about the altercation. Abdulkadir told Beeks that the altercation started with a casual conversation.  Abdulkadir did not say anything about having a dispute with Ahmed, Mohamud, and the other individual; about Ahmed, Mohamud, and the other individual making any threats; about the prostitution investigation or her role in it; about Ahmed, Mohamud, and the other individual having a knife; about why she agreed to fight Ahmed; or about being injured by a knife.  Beeks determined that Abdulkadir had not attempted to call 911 and that she instead obtained a knife, proceeded downstairs, and smashed the windshield of Ahmed's car.  Abdulkadir admitted to Beeks that she struck the other individual with the knife.

In addition to speaking with Beeks, Weyker spoke with a Minneapolis police sergeant, Gary Manty, on June 16, 2011.  Weyker gave Manty false information: that a friend of Ahmed and Mohamud had stated to Abdulkadir that her friends were incarcerated because of Abdulkadir; that the incarcerated individuals were Somali Outlaws; that a friend of Ahmed and Mohamud was acquainted with a man who had been indicted in the prostitution investigation; that Ahmed, Mohamud, and the other individual went to Abdulkadir's apartment building to intimidate Abdulkadir about being a federal witness against individuals who were arrested and charged in the prostitution investigation; and that Abdulkadir feared for her life and feared retaliation because of her involvement in the prostitution investigation.

Weyker provided the false information to Beeks and Manty to shield Abdulkadir from arrest. Weyker sought to assist Abdulkadir to avoid criminal charges so as to provide Abdulkadir an incentive to continue to work with Weyker by fabricating evidence and providing false testimony in the prostitution investigation.

Beeks arrested Ahmed, Mohamud, and the other individual on suspicion of tampering with a federal witness. While transporting them to jail, Beeks told them they were arrested because of the assertions Weyker had made about them.

On June 17, 2011, Weyker executed a federal criminal complaint and a supporting affidavit against Ahmed, Mohamud, and the other individual for tampering with a federal witness and obstructing the prostitution investigation. Weyker included false information in the criminal complaint. For instance, Weyker stated the altercation was related to the prostitution investigation, but she knew there were no facts to support the assertion. Weyker stated the friend of Ahmed and Mohamud confronted Abdulkadir because Abdulkadir was the reason her friends were incarcerated, but Weyker knew there was no factual basis to support the statement. Weyker claimed that Abdulkadir had been attacked with a knife and injured, but Weyker knew there was no evidence that Abdulkadir was attacked with a knife or injured. Weyker stated that Ahmed, Mohamud, or the other individual chased Abdulkadir outside with a knife, but Weyker knew Ahmed, Mohamud, and the other individual did not have a knife and did not chase Abdulkadir. Weyker asserted that Ahmed, Mohamud, or the other individual attacked Abdulkadir's mother, but Weyker knew nobody had attacked Abdulkadir's mother. Weyker stated that

Ahmed, Mohamud, and the other individual had threatened Abdulkadir about putting people in jail, but Weyker knew no such threats were made.

Weyker did not provide exculpatory evidence in the criminal complaint and supporting affidavit. For example, Weyker did not state that Ahmed, Mohamud, and the other individual called 911 to report being assaulted by Abdulkadir. Weyker did not stated that Abdulkadir contacted Weyker while hiding from the Minneapolis police out of fear of being arrested for assaulting Mohamud, Ahmed, and the other individual. Weyker did not state that that there was no record of Mohamud, Ahmed, and the other individual being involved with the individuals who were indicted in the prostitution investigation. Weyker did not state that there was no record of Mohamud, Ahmed, and the other individual communicating with Abdulkadir about the prostitution investigation. Weyker did not state that the on-scene investigator's interview with Abdulkadir revealed no statement about Mohamud, Ahmed, and the other individual threatening Abdulkadir; no statement about Mohamud, Ahmed, and the other individual attacking Abdulkadir with a knife; and no statement about Mohamud, Ahmed, and the other individual mentioning Abdulkadir's role as a witness in the prostitution investigation.

On June 17, 2011, warrants to arrest Mohamud and Ahmed were issued, and they were placed in federal custody. They were indicted on June 29, 2011, for violating federal laws. From June 17, 2011, to July 30, 2013, Ahmed remained in federal custody. She was acquitted of all charges after a jury trial. From June 17, 2011, to July 10, 2013, when all charges against her were dismissed, Mohamud remained in federal custody. She was subject to supervised release for a short time.

## II.    DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff satisfies this requirement by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In considering a motion to dismiss for failure to state a claim, "a district court generally may not consider materials outside the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008).  A district court may "consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" *Id.*

"[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (alteration in original)

(quoting *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016)); *accord Stanley v. Finnegan*, 899 F.3d 623, 627 (8th Cir. 2018); *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017). "The doctrine of qualified immunity generally shields public and government officials performing discretionary functions from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kulkay*, 847 F.3d at 642 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether a defendant is entitled to dismissal on the basis of qualified immunity, we consider '(1) whether the official's conduct violated a constitutional right; and (2) whether the violated right was clearly established.'" *Stanley*, 899 F.3d at 627 (quoting *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017)).

The parties presented matters outside the pleadings in connection with Weyker's motions to dismiss. The Court excludes them. *See* Fed. R. Civ. P. 12(d); *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 193 & n.7 (4th Cir. 2015) ("Although some of the parties' filings (such as the criminal complaint) could have been used for limited purposes . . . any disputed testimony contained therein should have been ignored in favor of the complaint's allegations. Perhaps more simply, the court could have wholly ignored such attachments and relied exclusively on the complaint." (citation omitted)); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (quotation omitted) (stating a court has complete discretion to determine whether to accept any material beyond the pleadings offered in connection with a Rule 12(b)(6) motion); *cf. Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)

("[A]lthough the final determination of March 2005 and Massie's testimony may be public records of which a court may take judicial notice, 'it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.'").

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)). "Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013) (quoting *Copeland v. Locke*, 613 F.3d 875, 879 (8th Cir. 2010)). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Ulrich*, 715 F.3d at 1059 (quoting *Borgman*, 646 F.3d at 523). "The probable cause standard inherently allows room for reasonable mistakes by a reasonable person, but the qualified immunity standard affords law enforcement officials an even wider berth for mistaken judgments 'by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

"A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment." *Small*, 708 F.3d at 1006 (quoting *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996)). "[W]hen a police

officer deliberately or recklessly makes false statements to demonstrate probable cause for an arrest warrant, the warrant may be invalidated" under *Franks v. Delaware*, 438 U.S. 154 (1978). *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). "To establish a *Franks* violation, the plaintiff must prove '1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to provide probable cause.'" *Id.* (quoting *United States v. Box*, 193 F.3d 1032, 1034-35 (8th Cir. 1999)). "Under *Franks*, [a plaintiff] can challenge the affidavit based on the omission of facts by proving '1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'" *Id.* at 1312 (quoting *Box*, 193 F.3d at 1035).

"It is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *Dowell v. Lincoln Cty.*, 762 F.3d 770, 777 (8th Cir. 2014) (quoting *Small*, 708 F.3d at 1003). It is also clearly established that "a seizure without 'a truthful factual showing sufficient to constitute probable cause' violates the Fourth Amendment." *Livers v. Schenck*, 700 F.3d 340, 357 (8th Cir. 2012) (quoting *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999)).

Weyker asserted that she is entitled to qualified immunity because "probable cause existed for Officer Beeks to arrest Plaintiffs independent of any information provided by Officer Weyker"; "Plaintiffs' initial arrest complied with the Fourth Amendment because probable cause existed for other crimes"; "the federal criminal complaint filed by Officer

Weyker was supported by probable cause"; "Plaintiffs' assertions of innocence and reliance on the judicial opinions in the sex trafficking cases lend no plausibility to a Fourth Amendment violation"; and "Plaintiffs' claims are barred because Plaintiffs did not mount a successful probable cause challenge during their criminal proceedings." Weyker's arguments relied heavily on matters outside the pleadings. According to the Ahmed's and Mohamud's amended complaints, Beeks regarded Ahmed and Mohamud as victims of a crime committed by Abdulkadir when he arrived on the scene on June 16, and nothing in his subsequent investigation, except the allegedly false information conveyed to him by Weyker, led him to believe that Ahmed or Mohamud had engaged in any criminal activity. Ahmed and Mohamud alleged that Weyker knowingly recounted a false narrative to support the criminal complaint against them. Given the allegations of Ahmed and Mohamud, their failures to successfully contest probable cause during their criminal cases do not vitiate their claims against Weyker. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 919-20 (2017). The Court concludes that Ahmed and Mohamud plausibly alleged Weyker violated rights under the Fourth Amendment and that their allegedly violated rights were clearly established. *See Odom v. Kaizer*, 864 F.3d 920, 922-23 (8th Cir. 2017); *Dowell*, 762 F.3d at 777; *Livers*, 700 F.3d at 357. At this stage of the litigation, Weyker is not entitled to qualified immunity.

In similar cases, the Court discerned no need to "decide whether the proper vehicle for [the plaintiff's] claims is a § 1983 or Bivens cause of action." *Osman v. Weyker*, Case No. 16-cv-908 (JNE/TNL), 2017 WL 3425647, at *6-7 (D. Minn. Aug. 9, 2017), *appeal*

*docketed*, No. 17-3209 (8th Cir. Oct. 13, 2017); *see Yassin*, 2017 WL 3425689, at *3 n.5.

The Court does the same here.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated

above, IT IS ORDERED THAT:

1.    Weyker's motions to dismiss [Docket No. 15 in Case No. 17-cv-2069; Docket No. 16 in Case No. 17-cv-2070] are DENIED.

Dated: September 18, 2018

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
